IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| TERRANCE WADDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 124-174 |
| | ) | |
| DESHAWN JONES, Warden; DR. LEE | ) | |
| LAROWE, Medical Director; and DR. | ) | |
| KYLE PRICE, Physician, | ) | |
| | ) | |
| Defendants. | ) | |

---

### MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

---

Before the Court is Plaintiff's Renewed Motion to Compel Discovery, (doc. no. 95), Defendant Deshawn Jones's Motion for Summary Judgment, (doc. no. 98), Defendants LaRowe and Price's Motion for Summary Judgment, (doc. no 100), Plaintiff's two motions for leave to file Sur Reply, (doc. nos. 119, 121), and Plaintiff's Motion for Leave to File Supplemental Authority, (doc. no. 122).

For the following reasons, Plaintiff's Renewed Motion to Compel is **CONSTRUED** as a motion for extension of the discovery deadlines and is **GRANTED**. (Doc. no. 95.) The Court **RECOMMENDS** that Defendants LaRowe and Price's Motion for Summary Judgment be **DISMISSED AS MOOT** with leave to refile. (Doc. no. 100.) Because the Court recommends the dismissal of Defendants LaRowe and Price's Motion for Summary Judgment, Plaintiff's Motion for leave to file Sur Reply should likewise be **DISMISSED AS MOOT**. (Doc. no. 121.) The Court **RECOMMENDS** that Defendant Jones' Motion for Summary Judgment be **GRANTED**. (Doc. no. 98.) Accordingly, Plaintiff's motions for leave to file sur-reply to

Defendant Jones' Motion for Summary Judgment, (doc. no. 119), and Plaintiff's Motion for Leave to File Supplemental Authority, (doc. no. 122) are **GRANTED.**

Finally, Defendants LaRowe and Price are **DIRECTED** to file a brief within fourteen days from the date of this Order detailing the consequences of their failure to answer the Complaint, including whether they have waived any affirmative defenses which should otherwise have been raised in an answer.  Plaintiff may have fourteen days from the date of Defendants LaRowe and Price's filings to respond.

## I.    PROCEDURAL BACKGROUND

Plaintiff, currently incarcerated at August State Medical Prison in Grovetown, Georgia, filed this case pursuant to 42 U.S.C. § 1983 bringing complaints for medical deliberate indifference.  (Doc. no. 1.)  Because Plaintiff was proceeding *pro se*, the Court screened his complaint and dismissed his official capacity claims for monetary damages against the defendants. (Doc. nos. 9, 10.) Defendant Jones answered the complaint on May 5, 2025. (Doc. no. 27.) Instead of answering, Defendants LaRowe and Price filed a Motion to Dismiss.  (Doc. no. 24.)  The undersigned recommended that the Motion to Dismiss be denied on August 18, 2025.  (Doc. no. 59.)  That recommendation was adopted on September 22, 2025.  (Doc. no. 63.)

Before the recommendation was adopted, Defendants LaRowe and Price filed a second Motion to Dismiss because of a pending bankruptcy.  (Doc. no. 62.)  The undersigned recommended that the motion be denied on January 12, 2026, (doc. no. 91), and the district judge adopted that recommendation on February 5, 2025, (doc. no. 104).  Although the pending motion to dismiss was denied, Defendants LaRowe and Price never answered Plaintiff's complaint.  They did, however, file a Motion for Summary Judgment.  (Doc. no. 100.)  Defendant Jones also filed a Motion for Summary Judgment.  (Doc. no. 98.)

As tortured as this analysis is, the history of discovery in this case is worse. On September 26, 2025, Plaintiff filed a Motion to Compel Discovery alleging, among other things, that Defendants LaRowe and Price had not provided him with discovery. (Doc. no. 64.) Before the Court ruled on the Motion to Compel, and apparently in response to Defendants' assertions that they had not been properly served with discovery, Plaintiff sent Defendants LaRowe and Price his discovery requests which they received on November 19, 2025. (Doc. no. 106, p. 2.) Defendants objected to these requests wholesale on the basis that the discovery period had closed. (Doc. no. 95, p. 4.) On December 11, 2025, the Court denied Plaintiff's first motion to compel because Plaintiff had not conferred in good faith with Defendants. (Doc. no. 84.) However, the Court instructed Plaintiff that he was entitled to refile his motion to compel if, after appropriate conferral, he believed there were meritorious arguments remaining. (Id. at 5-6.) On December 21, 2025, Plaintiff mailed a letter to Defendants re-enclosing his discovery requests and again requesting substantive responses. (Doc. no. 95, p. 2.) When Defendants did not respond to the letter, Plaintiff filed a renewed Motion to Compel on January 19, 2026, which was received and filed with the Court on January 27, 2026. (Id.) Defendants LaRowe and Price responded in opposition arguing that Plaintiff's motion was "procedurally improper," because Plaintiff had waited until January 2026 to seek compulsion rather than timely moving to extend discovery and had not conferred. (Doc. no. 106.)

In short, before the Court are two timely filed motions for summary judgment, one by a defendant who answered, and one by two defendants who have not yet answered the complaint. Competing with these two dispositive motions is a discovery motion Plaintiff filed against the two defendants who have yet to answer.

The Court addresses first Defendants' LaRowe and Price's failure to answer.  Second, the Court addresses Plaintiff's outstanding discovery motion.  Finally, the Court reaches the merits of Defendant Jones' Motion for Summary Judgment.

## II.    ANALYSIS

### A. Defendants LaRowe and Price's Absent Answer

In federal court, no party is excused from answering the complaint upon the loss of a motion to dismiss.  Federal Rule of Civil Procedure 12(a)(4)(A) states "if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action."   The Court's denial of Defendants LaRowe and Price's initial motion to dismiss in September of 2025 should have triggered this obligation.  (Doc. no. 63.)  However, instead of answering, Defendants filed a secondary motion to dismiss.  (Doc. no. 62.)  Assuming without deciding this second motion to dismiss was valid and operated to stay the Defendants' answer, the order in February of 2026 denying the second motion to dismiss triggered the deadline for Defendants to file an answer.  (Doc. no. 104.)  That answer was due on February 19, 2026, however, nothing was submitted to the Court.

Plaintiff's claim is brought pursuant to the Prison Litigation Reform Act ("PLRA").  In this circuit, when the Court has not yet ordered a responsive pleading from a defendant in a case brought pursuant to PLRA, 42 U.S.C. § 1997e(g) "is designed to prevent the entry of default in favor of a prisoner-plaintiff against any defendant who does not file a timely responsive pleading to a complaint."   See Walker v. Smokes, 2016 WL 4099255, at *2 (S.D. Ga. Aug. 2, 2016) (citations omitted).  However, the Court had directed Defendant's LaRowe and Price to respond, (doc. no. 9), and "[w]hile § 1997e(g) allows a Defendant to wait to respond until directed to do so . . . it is not accepted that § 1997e(g) permits a Defendant to ignore a court order directing a

response." See Price v. Howard, 2011 WL 1212238, at *1 (W.D. Mich. Jan. 18, 2011), report and recommendation adopted, 2011 WL 1212234 (W.D. Mich. Mar. 31, 2011) (quoting Halpin v. David, 2008 WL 5663943 at * 2 (N.D. Fla., Dec. 8, 2008)). Because the Court directed service of the complaint on Defendants LaRowe and Price after screening Plaintiff's complaint, the PLRA does not *per se* bar default.

However, the Federal Rules of Civil Procedure do not provide a method by which to place Defendants in default. Rule 55 requires an entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Eleventh Circuit has been explicit that a default is only appropriate where a party fails to "otherwise defend," which "refer[s] to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits." Bass v. Hoagland, 172 F.2d 205, 210 (5th Cir. 1949)[1]; see also, Abdullah v. City of Jacksonville, 242 F. App'x 661, 663 (11th Cir. 2007) (*per curiam*) (noting plaintiff "was not entitled to a default judgment because, although the defendants did not file an answer to his amended complaint, they filed a motion to dismiss and a motion for summary judgment, setting forth all their affirmative defenses and submitting evidence in support of their defenses."). Defendants timely filed multiple motions to dismiss in this case. Likewise, they have appeared via counsel and have participated in discovery and motions practice. (See doc. no. 34, p. 2 (noting "entry of default against Defendants is not appropriate because they have not failed to plead or otherwise defend against Plaintiff's complaint as required by Fed. R. Civ. P. 55(a).")).

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

Be that as it may, it leaves the Court in an untenable position wherein the case is currently proceeding without a responsive pleading from Defendants LaRowe and Price. And it is unclear what the consequences of this failure to answer are considering the procedural history. Generally speaking, any defense not raised in an answer is waived. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense."); see Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir.1988) ("[T]he general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial.") (citing Am. Nati'l Bank v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1453 (11th Cir. 1983)). When an affirmative defense is raised for the first time pursuant to a summary judgment motion, the Eleventh Circuit has determined the defendant's "failure to specifically plead the defense in its answer or amended answer results in the waiver of this defense." Easterwood v. CSX Transp., Inc., 933 F.2d 1548, 1551 (11th Cir.1991) (citing Morgan Guar. Trust Co. of N.Y. v. Blum, 649 F.2d 342, 345 (5th Cir. Unit B 1981)). However, in at least one case the Eleventh Circuit has suggested a motion to dismiss and a motion for summary judgment can be combined to offer some kind of responsive pleading when both remain pending at the same time. See, Abdullah, 242 F. App'x at 663. However, this case is different from Abdullah as the motions to dismiss were disposed of prior to the Court ruling on the pending motion for summary judgment.

Accordingly, Defendants LaRowe and Price are **DIRECTED** to file a brief within fourteen days from the date of this Order detailing whether they have waived any affirmative defenses which should otherwise have been raised in an answer. Plaintiff may have fourteen days from the date of Defendants' filings to file any response. Because of the uncertainty engendered by Defendants LaRowe and Price's failure to answer, their Motion for Summary Judgment should be

6

**DISMISSED** as **MOOT** with leave to refile.  Because the Court recommends the dismissal of Defendants LaRowe and Price's Motion for Summary Judgment, Plaintiff's Motion for leave to file Sur Reply should be **DISMISSED AS MOOT**.  (Doc. no. 121.)

**B.  Plaintiff's Motion to Compel Against Defendants LaRowe and Price**

Plaintiff's renewed motion to compel against Defendants LaRowe and Price asserts he filed discovery in June of 2025.  (Doc. no. 95, p. 2.)  He then states that after Defendants claimed non-receipt, (doc. no. 69), he reserved identical discovery on October 25, 2025, (doc. no. 95, p. 2).  Defendants filed objections to all Plaintiff's discovery requests, filed no substantive responses, and asserted the discovery requests were untimely.  (Id.)  As a result, Plaintiff sent a good faith letter requesting substantive responses and explaining the impropriety of their objections.  (Id.)  Plaintiff notes he never received a response to this letter.  (Id.)

Defendants LaRowe and Price do not believe Plaintiff's motion to compel is viable.  First, although they acknowledge Plaintiff attempted to serve discovery via PACER, Defendants note they were never timely and properly served with discovery.  (See doc. no. 106, p. 1).  Second, Defendants claim the subsequent filing of the discovery in October (a month after the Court's scheduled deadline, but several months before the Court ultimately ruled on the first motion to compel), is an improper attempt to obtain discovery after the Court's deadline has expired.  (Id.)  Third, Defendants believe Plaintiff cannot show diligence because he "waited until January 2026 to seek compulsion rather than timely moving to extend discovery."  (Id.)  Finally, Defendants claim they have been deprived of an opportunity to "engage in a meaningful meet-and-confer, as required by Rule 37," because Plaintiff's objection letter "failed to identify any specific issue with Defendants' objection or any legal basis for claiming the objections were improper."  (Id. at 2-3.)  Defendants believe reopening discovery would "undermine the Court's schedule and prejudice

Defendants given the case posture and impending dispositive-motion deadlines." (Id. at 2.) As a result, Defendants argue the Court should deny the Motion to Compel without reaching the merits of Plaintiff's Rule 37 arguments. (Id.)

To the extent Defendants' objections rely on an extension impeding the Court's scheduling order, Defendants' own failure to answer the Complaint and the subsequent mooting of their motion for summary judgment obviates that objection. What remains then is whether 1) Plaintiff adequately complied with the meet-and-confer obligations such that his motion to compel is properly before the Court, and 2) how the Court should address his motion to compel.

Defendants responded to the discovery which Plaintiff sent in October of 2025 on December 19, 2025, objecting to each one on the basis that "Defendant objects to this interrogatory on the grounds that discovery in this matter has closed pursuant to the applicable rules and/or scheduling order. As such Defendant is under no obligation to provide further responses. This Interrogatory is therefore untimely and improper and does not require a response." (Doc. no. 95, p. 4.) Plaintiff states he sent a letter explaining why the objections were improper and requesting Defendants respond substantively. (Id. at 2.) However, as Defendants point out, the letter did not explain why the objections were improper, it merely requested Defendants answer the various requests. (Doc. no. 106-1.) Defendants assert "because Plaintiff did not articulate any particularized concern or provide any substantive explanation, Defendants were deprived of the opportunity to engage in a meaningful meet-and-confer, as required by Rule 37." (Doc. no. 106, p. 2-3).

Considering Defendants objected wholesale to every discovery request, their apparent lack of clarity regarding the subject of Plaintiff's letter is disingenuous. Equally unclear is how Defendants expected Plaintiff to comply with his meet and confer obligations when they chose to

8

never respond to his letter.  See Mitchell v. Felker, 2010 WL 3835765, at *3 (E.D. Cal. Sept. 29, 2010) (counsel met obligation to attempt to meet and confer by leaving voice message for opposing counsel to which opposing counsel did not respond); see also Lewis v. City of Brunswick, 2015 WL 5316572, at *5 (S.D. Ga. Sept. 10, 2015) (noting meet and confer obligation was met when defendants sent email to which plaintiff did not respond).  Considering the absence of any response to the letter sent on December 21, 2025, the Court concludes Plaintiff complied with his meet and confer obligations.

What remains then is whether Plaintiff timely submitted his discovery requests, and if he did not, whether he is entitled to any further discovery considering his renewed motion to compel. Although Plaintiff's motion to compel was filed with the Court on September 26, 2025, it was signature filed on August 22, 2025, (doc. no. 64, p. 11), which was before the Court's discovery deadline of September 22, 2025 (doc. no. 28).  And while the Court ultimately denied Plaintiff's motion because he failed to confer with the Defendants, it granted him leave to renew his motion after he conferred.  (Doc. no. 84, pp. 5-6.)  Even before Plaintiff received the Order denying his motion to compel, he resubmitted discovery requests to Defendants in October because Defendants informed Plaintiff they had not received those requests.

Having reviewed the Motion to Compel and the fact that it relies largely on the timing of the various filings, it appears Plaintiff requests the Court extend the discovery deadlines in this case, which would in turn eliminate the timing objection raised in Defendants' LaRowe and Price's discovery responses and necessitate a substantive response.  (See doc. no. 64, pp. 5-6, 10 (detailing the compressed response timeline necessitated by the extensions granted to defendant and requesting an additional 60 days for discovery); doc. no. 95, p. 6 (requesting the Court "Grant such other relief as the Court deems just and proper.")).  The Court concludes this is an appropriate

interpretation of the motion, and accordingly, the Court **CONSTRUES** Plaintiff's Motion to Compel as a motion for extension of the discovery deadlines. See Torres v. Miami-Dade Cnty., Fla., 734 F. App'x 688, 691 (11th Cir. 2018) (*per curiam*) (explaining a court "must sometimes look beyond the labels used in a pro se party's [motion] and focus on the content and substance of the allegations").

Fed. R. Civ. P. 6(b)(1)(B) provides a "court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Under Fed. R. Civ. P. 16(b)(4) a scheduling order "may be modified only for good cause and with the judge's consent." Courts consider four factors: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). The Court has broad discretion over scheduling and discovery. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997) (citation omitted).

The Court concludes reopening discovery as to Defendants LaRowe and Price is warranted. Although the case has been pending for a significant period, the delay is not because of the parties proceeding in bad faith. Instead, the record is replete with extensions granted to all the parties for a variety of reasons. (Doc. nos. 22, 25, 33, 39, 54, 85, 108, 113). These delays were the result of both the Defendants' requests to extend their time to answer and respond to some of Plaintiff's filings but Plaintiff's incarceration also played a role. Likewise, there is no danger of prejudice to Defendants LaRowe and Price, especially considering the absence of an answer and the fact that the Court has granted them leave to refile a motion for summary judgment at a later date. Moreover, the discovery Plaintiff seeks relates directly to his claims of deliberate indifference to

his serious medical needs and will provide context for Plaintiff's claims as well as an of Defendants' defenses.

Plaintiff is not asking for the proverbial "second bite at the apple." While Plaintiff may not have always proceeded in this case as expected or required of the Local Rules, it is difficult to argue he was not at least diligent in seeking discovery and responsive when his errors were pointed out. As a result, the Court will continue discovery for a limited period until October 6, 2026. Plaintiff is instructed to resubmit his discovery requests to Defendants LaRowe and Price within that time. While the Court expresses no opinion as to the various objections which Defendants may raise, the Court will consider these discovery requests (if submitted within the proper window) to be timely filed.

## C. Defendant Jones' Motion for Summary Judgment

Defendant Jones is not the subject of Plaintiff's Motion to Compel, nor has Defendant Jones failed to comply with the rules regarding the filing of an answer. As a result, his motion for Summary Judgement is ripe and properly before the Court. (Doc. no. 98.) Plaintiff's motions for leave to file sur-reply to Defendant Jones' Motion for Summary Judgment, (doc. no. 119), and Plaintiff's Motion for Leave to File Supplemental Authority, (doc. no. 122) are **GRANTED.**

### a. Factual Background

Plaintiff was an inmate at Augusta State Medical Prison. On February 26, 2024, Plaintiff submitted a grievance numbered 364667, (the "February grievance"), alleging he had not received a hip replacement or spinal injections which had been ordered in May of 2023. (Doc. no. 98-2, p. 2.) He also requested placement in a medical bed. (Id.) On March 7, 2024, Defendant LaRowe submitted a witness statement indicating Plaintiff had an "upcoming appointment to see orthopedics about [his] hip replacement," and that "we are just waiting for an appointment date

11

from the providers," for Plaintiff's hip replacement. (Id.) Defendant LaRowe indicated medical beds were allotted based on need and, at the time, "I simply do not have any beds." (Id.) Plaintiff also ultimately received an egg crate mattress and a double matt. (Id.)

Defendant Jones became Warden on June 16, 2024. (Doc. no. 98-2, p. 1.) He was not part of the review, investigation, or disposition of the February grievance nor is there evidence he interfered with the disposition of that grievance. (Id. at 2.) However, in June of 2024, Defendant Jones interacted with Plaintiff during a daily inspection. (Doc. no. 109, p. 3.) Plaintiff claims during this interaction they discussed Plaintiff's medical issues and Defendant Jones stated he would take care of them. (Id.)

On August 23, 2024, Plaintiff submitted grievance 371562 (the "August grievance") claiming he was still suffering from pain in his hip, back, and left arm and "Nurse Tyler had denied him access to a medical provider." (Doc. no. 98-2, p. 3.) He requested to see a spinal specialist, receive spinal injections, be placed in a medical bed, undergo hip replacement surgery, and receive evaluation for his left arm pain. (Id.) Defendant Jones evaluated the grievance and determined Plaintiff had been evaluated at a sick call on August 22, 2024, where he requested orthopedic care, surgery, medication review, and had been referred for the next available provider sick call. (Id.) Accordingly, Defendant Jones determined the grievance had been resolved. (Id.)

Plaintiff filed this case on October 3, 2024. (Doc. no. 1.) Plaintiff underwent a total hip replacement on December 6, 2024. (Doc. no. 98-2, p. 3.) On March 14, 2025, after the hip replacement surgery and while Plaintiff was still recovering, a note was placed in Plaintiff's medical file stating "Warden Jones does not want Waddell moved." (Doc. no. 116, p. 99.)[2]

---

[2] The Court noted this date although the information was not provided in Plaintiff's response to Defendant Jones' Motion for Summary Judgment. The notation was merely referenced in Plaintiff's response. Doc. no. 109.

### b. Discussion

### i. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule Civil Procedure 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### ii. Medical Deliberate Indifference

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need –the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). In particular, the plaintiff must first demonstrate he suffered a "objectively, sufficiently serious" deprivation. Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

After this initial threshold question, the plaintiff must also demonstrate a defendant acted with "subjective recklessness as used in the criminal law" by showing a defendant was "actually, subjectively aware his own conduct caused a substantial risk of serious harm to the plaintiff," but even if he knew of that substantial risk, he is not liable under the Eighth Amendment "if he responded reasonably to the risk." Wade, 106 F.4th at 1262 (citing Farmer, 511 U.S. at 839, 844-45). Mere

14

allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).

In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow, 320 F.3d at 1244 n.12 ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

### iii. Plaintiff's Claim Against Defendant Jones Fails Because No Reasonable Juror Could Find Defendant Jones Acted with Subjective Recklessness or Caused Plaintiff Any Injury.

Defendant Jones does not contest Plaintiff had a serious medical need and thus the Court presumes Plaintiff satisfies the objective component of a medical deliberate indifference claim. See Hayes v. Lewis, 2017 WL 104176, at *3 (S.D. Ga. Jan. 10, 2010), adopted sub nom., Hayes v. Toole, 2017 WL 898000 (S.D. Ga. Mar. 7, 2017) ("Plaintiff alleges that he has difficulty walking and suffers constant pain as a result of his denial of hip replacement surgery. Thus, Plaintiff has

shown that he has a serious medical need and has, therefore, satisfied the objective component of his deliberate indifference claim."). However, there is nothing in the record to establish the subjective recklessness component is established in this case. "Prison officials who rely on medical personnel for the clinical determinations lack the requisite knowledge for deliberate indifference, absent evidence that clinical determination were unreliable." Lynch v. Jackson, 478 F. App'x 613, 619 (11th Cir. 2012) (*per curiam*) (citing Howell v. Burden, 12 F.3d 190, 191, 194 (11th Cir. 1994)). In this case, Defendant Jones investigated the August grievance and determined Plaintiff was receiving medical care including pain medication and had been scheduled for the next available provider sick call. Additionally, Plaintiff received his hip replacement less than three months after the August grievance was denied. Defendant Jones was warden for a short period of time, within which Plaintiff received the care he had been seeking, and Defendant Jones was entitled to rely on medical staff for their clinical determinations.

Plaintiff argues there is evidence in the medical record from *after* he received his hip replacement which states "Warden Jones does not want Waddell moved." (Doc. no. 109, p. 6.) He claims this establishes that Defendant Jones had authority to make medical decisions or override medical staff. He also asserts Defendant Jones was aware of his medical grievances as early as June 2024, when he met with Plaintiff during a daily inspection. Plaintiff argues he showed Defendant Jones his initial grievance, explained his medical situation at length, and Defendant Jones stated, "I'll take care of it." (Doc. no. 109, p. 3.) He notes that Defendant Jones knew Plaintiff had not received treatment for over a year after specialists recommended that treatment. (Id.)

Plaintiff points to these facts in support of his argument that Defendant Jones' response to the grievance was constitutionally inadequate because referral to a provider sick call would not

16

provide Plaintiff access to the orthopedic, and spinal specialists he required along with the medical bed placement he desired.  (Id.)  He argues Defendant Jones' response was not "reasonable," because there were other, alternative actions Defendant Jones could have taken to assure Plaintiff received the medical care he needed.  (Id. at 6.)  Moreover, Defendant did not respond to the alleged "retaliation," claim Plaintiff seeks to bring for actions which were taken immediately after Defendant Jones was served with this Complaint.  (Id. at 7.)  Specifically, Plaintiff alleges Defendant Jones retaliated against Plaintiff by having him transferred one day after service of this lawsuit, while he was still in post-surgical recovery.  (Id.)

As an initial matter, the actions which form the basis of Plaintiff's alleged retaliation claim occurred after the filing of Plaintiff's complaint on October 3, 2024.  (Id.)  Setting aside whether this transfer was retaliatory entirely, it cannot form the basis of a claim in this lawsuit.  It is a new complaint which has not yet been raised in this Court.  The proper manner in which to raise a new allegation is not to bring it in a responsive pleading.  "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.  The proper procedure for [Plaintiff] to assert a new . . . claim was to seek to amend [his] complaint."  Gilmore v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  While Plaintiff did attempt to amend his Complaint once, that amendment was in response to the Defendants' assertions Plaintiff had misrepresented his previous filings.  (Doc. no. 26.)  Thus, his only amendment to the Complaint in this case sought merely to add additional

17

information about his previous filings but did not raise any additional substantive allegations.[3] (Doc. no. 109, p. 7.)

Even if Plaintiff had moved to amend his Complaint, he remains subject to PLRA's requirement that he fully exhaust his claims before filing the amendment.  The PLRA provides "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of available remedies is mandatory; "[a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account."  Ross v. Blake, 578 U.S. 632, 638-39 (2016).  The statute's plain language "means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court."  Leal v. Georgia Dept. of Corrs., 254 F.3d 1276, 1279 (11th Cir. 2001) (internal quotation marks and citation omitted); see also McDaniel v. Crosby, 194 F. App'x 610, 613 (11th Cir. 2006) (*per curiam*) (grievances and administrative appeals submitted after a complaint was filed "cannot be used to support [a] claim that [a plaintiff]

---

[3] Plaintiff asserts that an Eighth Amendment claim is not frozen at the moment of filing.  (Doc. no. 118, p. 5.)  However, the cases which Plaintiff cites in support of his proposition, Cotone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) and Nelson v. Prison Health Servs., 991 F. Sup. 1452, 1462 (M.D. Fla. 1997), both address qualified immunity and do not stand for the proposition he cites.  Plaintiff admits that his documents are being typed by a non-attorney third-party.  (Doc. no. 112.)  Some of these cases appear to be generated by artificial intelligence as they contain hallucinated legal authorities similar to those above.  Plaintiff is warned that a Court may impose Rule 11 sanctions when a party presents a filing with hallucinated cases to the Court.  See, e.g. Jackson v. Auto-Owners Ins. Co., 2025 WL 1932274, *5-6 (M.D. Ga. July 14, 2025) (sanctioning attorney for including hallucinated cases in plaintiff's response to the defendant's motion to dismiss).  As the United States District Court for the Southern District of Florida recently noted, Courts that have addressed the submission of non-existent case citations and fake legal authority, usually generated by artificial intelligence programs, "consistently agree that the use of fake legal authority is problematic and warrants sanctions."  O'Brien v. Flick, 2025 WL 242924, at *6 (S.D. Fla. Jan. 10, 2025); see also Marion v. Hollis Cobb Assocs., Inc., 2025 WL 1275828, *5 (N.D. Ga. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 1606912 (N.D. Ga. Apr. 21, 2025) ("[C]ourts tend to find that Fed. R. Civ. P. 11(b)(2) applies in the context of litigants citing to AI-hallucinated cases in documents submitted to courts.").  Plaintiff's status as a *pro se* litigant provides no shield against the imposition of sanctions.  See, e.g., Moon v. Newsome, 863 F.2d 835, 837-38 (11th Cir. 1989).

exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of [the] suit, and, thus, must have occurred before the suit was filed." (citation omitted)).    Plaintiff has provided no evidence that his retaliation claim has been exhausted.

This same timing problem infects Plaintiff's evidence regarding the control Defendant Jones exerted over his medical decisions.    Plaintiff argues the notation in Plaintiff's medical records that Defendant Jones did not want Plaintiff moved when he was unable to maneuver his wheelchair in a tight space indicates control over Plaintiff's medical decisions.  (Doc. no. 118, p. 9.)    However, the notation was made months after Plaintiff initiated this lawsuit, and several months after Plaintiff received his hip replacement surgery. (Doc. no. 116, p. 99.)    Thus, it cannot establish anything about Defendant Jones' subjective knowledge at the time of the filing of the complaint.    The only evidence Plaintiff proffers which supports his allegations that Defendant Jones had subjective knowledge of his medical condition, was the conversation which allegedly occurred in June wherein Defendant Jones took a picture of a Plaintiff's grievance and promised to "take care of it."    (Doc. no. 109, p. 8.)    Assuming without deciding that this establishes the requisite knowledge, it does nothing to establish that Defendant Jones had the authority to act to affect any medical treatment.

As a result, nothing in the record, including the information Plaintiff provided, establishes Defendant "prevented treatment, refused treatment, or personally participated in any medical decision other than through the denial of Plaintiff's grievance." Kline v. Maiorana, 2022 WL 980280, at *4 (N.D. Fla. Feb. 8, 2022), report and recommendation adopted, 2022 WL 972428 (N.D. Fla. Mar. 31, 2022).  Instead, the record establishes that after becoming aware of Plaintiff's grievance, Defendant Jones investigated it and closed it upon learning Plaintiff had been scheduled

19

to see a medical doctor. This denial does not show how Defendant Jones personally participated in or caused Plaintiff not to receive medical care. Indeed, the record establishes Plaintiff received the desired medical care shortly after the grievance was filed. Moreover, it is well settled that, "supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." Williams v. Limeston Cty., Ala., 198 F. App'x 893, 897 (11th Cir. 2006) (per curiam) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). Thus, it was reasonable for Defendant Jones to rely on the determinations made by the nurses and doctors as to the proper treatment for Plaintiff. Moreover, there is "no law that establishes that a warden in a similar situation must take additional steps after such a grievance was denied to assure that Plaintiff received his requested medical [treatment]. It is likewise unlikely that any reasonable warden in a similar situation would have taken additional steps or pursued a further investigation." Allah v. Gramiak, 2014 WL 824217, at *7 (M.D. Ga. Mar. 3, 2014). This standard does not change merely because the issue is presented at the summary judgment stage. See Wood v. Nichols, 2021 WL 4483517 (N.D. Fla. Aug. 31, 2021), report and recommendation adopted 2021 WL 4478664 (N.D. Fla. Sept 30, 2021) (finding that absence of evidence of Warden's personal participation in the alleged constitutional deprivation or causal connection between Warden's acts and the alleged deprivation warranted summary judgment). Plaintiff has not proffered any evidence that establishes that Defendant Jones interfered with his medical treatment other than by denying his grievance and this is not enough to support his claim. As a result, Defendant Jones' Motion for Summary Judgment should be **GRANTED**.[4]

---

[4] Defendant argues he is entitled to qualified immunity. (Doc. no. 98-1, pp. 6-7.) Because he is entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of immunity and damages are ultimately moot, and the Court will not address them. See Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (per curiam).

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Renewed Motion to Compel is **CONSTRUED** as a motion for extension of the discovery deadlines and is **GRANTED**.  (Doc. no. 95.)  The Court **RECOMMENDS** that Defendants LaRowe and Price's Motion for Summary Judgment be **DISMISSED AS MOOT** with leave to refile.  (Doc. no. 100.)  Because the Court recommends the dismissal of Defendants LaRowe and Price's Motion for Summary Judgment, Plaintiff's Motion for leave to file Sur Reply should likewise be **DISMISSED AS MOOT**.  (Doc. no. 121.) The Court **RECOMMENDS** that Defendant Jones' Motion for Summary Judgment be **GRANTED**.  (Doc. no. 98.)  Accordingly, Plaintiff's motions for leave to file sur-reply to Defendant Jones' Motion for Summary Judgment, (doc. no. 119), and Plaintiff's Motion for Leave to File Supplemental Authority, (doc. no. 122) are **GRANTED.**

Finally, Defendants LaRowe and Price are **DIRECTED** to file a brief within fourteen days from the date of this Order detailing the consequences of their failure to answer the Complaint, including whether they have waived any affirmative defenses which should otherwise have been raised in an answer.  Plaintiff may have fourteen days from the date of Defendants LaRowe and Price's filings to respond.

SO ORDERED and REPORTED AND RECOMMENDED this 10th day of August, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

21